ANDREW H. LEIGHTON & another, petitioners for partition, *vs.*
ALFRED L. LEIGHTON & another.

*Will—construction of—vested remainder.*

A will, after devising the testator's property to his wife Jane, "during her natural life," continued: "After the death of my wife Jane, it is my will that my son Reuel have all the property, both real and personal, which may then remain, by paying out" "in six months after her death" to each of the testator's two sons by a former wife, a certain legacy, and in one year after their mother's death, a certain bequest to each of two children by his wife Jane, a brother and sister of Reuel. Jane survived her son Reuel, who, without paying any of the bequests, died intestate and unmarried, and she remained a widow until she died intestate. On the trial of a petition for partition brought by the testator's children by the former wife against the surviving children by the latter, *Held,* (1) That the will gave to the wife, Jane, a life-estate; (2) To his son Reuel a vested remainder in fee-simple, liable to be devested only by non-payment of the bequests to the other children as a condition subsequent and an actual entry on the part of those entitled to claim a forfeiture by reason of a breach of the condition; (3) On the death of Reuel, the property descended in equal shares to his mother, brothers, and sister; and that, (4) On the death of his mother, her fifth descended to her children.

ON REPORT.

PETITION FOR PARTITION.

The material facts are all stated in the opinion.

*A. Merrill,* for the petitioners.

If Reuel S. Leighton took under his father's will a vested remainder, then the petitioners' share in the estate is one-fifth; but if a contingent remainder, their share is one-fourth.

I. Reuel's interest under the will was a contingent remainder,—dependent upon the contingency (1) that he survived his mother, and (2) that he paid the legacies to the other heirs named in the will. These were conditions precedent; and his own death happening before the termination of the life-estate of his mother rendered their performance impossible; that in consequence of the non-performance of the conditions, and the occurrence of an event that rendered their performance an impossibility, the devise over to Reuel never vested in him, but lapsed into the undevised estate, and descended to the heirs at law of the testator (the two petitioners and the two respondents) in equal shares of one quarter each, in the same manner as if the will had made no mention of the remainder. *Varney* v. *Stevens*, 22 Maine, 231.

" The intention of the testator is the great and governing guide for the construction of wills." *Morton* v. *Barrett*, 22 Maine, 265 ; *Fisk* v. *Keene*, 35 Maine, 354. " After the death of my beloved wife Jane, it is my will that my son, Reuel S. Leighton, have all the property, both real and personal, which may then remain, by paying out the following bequests," is the language of the will. The testator manifestly never intended that Reuel should have the whole property, " both real and personal," without paying " the bequests," or he would not have imposed the conditions. It was only upon the contingency that Reuel should survive his mother, combined with the condition that he should pay the bequests, that he was to take the estate at all. The happening of the contingency was just as effectual to render the remainder a contingent one, as if it had been to pay the bequests after his " return from Rome." *Non constat* that he would survive his mother, so he could pay.

If the remainder never vested in Reuel, it never descended from him.

II. If the intention of the testator was otherwise, the will failed to express it, and the court will not supply omissions for such a purpose. *Pickering* v. *Langdon*, 22 Maine, 429, 431.

III. There is no second devise over to meet the contingency of the first, to wit, of Reuel's not surviving his mother. And the oc-

currence of his death before his mother changed the contingency into a certainty that payment was an impossibility, and the devise to him lapsed, and the remainder descended to the heirs at law of his father. Redfield on Wills, part II, §§ 50, 505, 506 ; §§ 64, 694, 695 ; §§ 57, 631 ; §§ 65, 649, 663, 664.

IV. A contingent remainder is limited so as to depend on an event which is dubious or uncertain, and may never happen or be performed, or not until the determination of the particular estate. It is not the uncertainty of enjoyment in the future, but the uncertainty of the right to that enjoyment, which marks the difference between a vested and contingent remainder. 4 Kent's Com. 206 ; 2 Black. Com. 169. The event of Reuel's surviving his mother was " dubious and uncertain," and might never happen. If it did not happen, the condition could never be performed, and hence the " right to the enjoyment " was " uncertain." The uncertainty of survivorship, accompanied by the possible impossibility of performing the condition, rendered the " right to the enjoyment" of the estate dubious and uncertain, and hence the remainder contingent. The contingency could not cease until he had survived his mother, and the remainder could not vest while his mother lived. *Olney* v. *Hull*, 21 Pick. 311 ; *Hunt* v. *Hall*, 37 Maine, 363.

V. Although the law favors vested rather than contingent remainders, yet " this preference is not to be so pressed as to defeat the intention of the testator." *Hurlburt* v. *Emerson*, 16 Mass. 244 ; *Richardson* v. *Wheatland*, 7 Met. 171. *Stark* v. *Smiley*, 25 Maine, 201, is not in point; for there was no life-estate, and consequently no question of vested or contingent remainder.

VI. The devise to Reuel being upon condition, could not vest until he accepted the condition ; and the acceptance evidenced by some positive, affirmative act or declaration, for it cannot be presumed or inferred in the absence of proof. Redfield on Wills, §§ 67, 686 ; *Bowker* v. *Bowker*, 9 Cush. 524; *Marwick* v. *Andrews*, 25 Maine, 529.

Even if the condition were subsequent (which is not admitted), it must be accepted before it can vest in Reuel; for until accepted,

the legatees would have no lien on the estate for the payment of the legacies; and if it vested without such acceptance, he could devise or convey it, and thus defraud the legatees of the legacies.

VII. The widow had the power to dispose of the whole estate for her own support, had she found it necessary; for Reuel was to have " after the death " of his mother all the property " which may then remain." *Non constat* that any would remain, so that he would ever have the " right to the enjoyment " of any of the estate. His " right to the enjoyment " was rendered uncertain by this power of disposal by his mother. What the first taken has the power to dispose of at will, or on a certain event, or for a certain purpose, is contingent. The widow had the power of disposal. *Harris* v. *Knapp*, 21 Pick. 416; *Ramsdell* v. *Ramsdell*, 21 Maine, 288.

*Davis & Drummond*, for the respondents.

BARROWS, J. Petition for partition. Edward Leighton, the former owner of the premises, died testate Feb. 22, 1850, leaving a widow, Jane Leighton, and five children, viz., the two petitioners, his children by a deceased wife, the two respondents, and Reuel S., who were the children of Jane. By his will he gave to his wife Jane, after the payment of debts, etc., " all the residue and remainder of my property during her natural life, she not making unnecessary strip or waste." The will proceeds as follows : " Second. After the death of my beloved wife Jane, it is my will that my third son, Reuel S. Leighton, have all the property, both real and personal, which may then remain, by paying out the following bequests, viz.: To (the two petitioners) forty dollars each in six months after her decease ; to my daughter, Hannah H. Leighton (one of the respondents), forty dollars in one year after her mother's decease ; and to my son, Alfred L. Leighton (the other respondent), forty dollars in one year from his mother's decease, if he should be twenty-one years of age, if not, to be paid when he arrives at that age, and also the expense of his bringing up and support to that time."

Reuel S. Leighton died intestate and unmarried in 1857.   Jane Leighton remained a widow until her death, intestate, Feb. 3, 1869.

No administration has ever been had upon Reuel's estate, and none of the legacies above referred to have been paid.   Alfred was twenty-one years old at the time of his mother's death.   Upon these facts agreed, the single question submitted to us is, What share are the petitioners legally entitled to in the estate,—and their right to a judgment for partition accordingly is not disputed.

The petitioners claim that no estate vested in Reuel by the devise,—that the remainder given to him by the will was contingent, depending entirely upon his surviving his mother, accepting the devise, and paying the legacies to his brothers and sister as a condition precedent, and that they are entitled, as heirs of their father, to half the estate, or one-fourth each.   The respondents contend that the remainder vested in Reuel, descended from him to his heirs at law, one of whom was their mother, Jane Leighton, whose fifth of the premises thus inherited from her son, descended at her decease to these respondents, thereby giving them three-fifths, and the petitioners two-fifths of the whole estate, or one-fifth instead of one-fourth to each of the petitioners, and three-tenths to each of the respondents.

Though not couched in choice technical terms, we think that Edward Leighton's intention to dispose of his whole estate by will, and to leave no portion of it undevised or subject to any contingency as to its final disposition, is clearly manifested, and that in and by that will he gave to his wife Jane a life-estate, and to his son Reuel a vested remainder in fee-simple, liable only to be devested by non-payment of the legacies to the other children as a condition subsequent, and an actual entry on the part of those entitled to claim a forfeiture by reason of a breach of the condition.

The remark of Parsons, C. J., in *Dingley* v. *Dingley*, 5 Mass. 535, that "a remainder is not to be considered as contingent when it may be construed consistently with the testator's intention as vested," presents a rule which has been practically enforced as uni-

formly as any that can be found in the books. Compare the language which was held in that case, to carry a vested remainder descending on his decease to the heirs of the remainder-man, with that used by Edward Leighton.

The uncertainty whether Reuel S. Leighton would outlive his mother (who had the estate for life), and so come into the actual possession and enjoyment of the estate, would not make the remainder a, contingent one if he had by the will a present absolute right to have the estate as soon as her life-estate should determine.

See 2 Washburn on Real Property, p. 227, ed. of 1862, Book 2, c. 4, §§ 14, 15, 16, 17, where the doctrine applicable to this point is discussed and illustrated with great clearness, and with copious references. See also, *Williams* v. *Amory*, 14 Mass. 20.

In *Olney* v. *Hull*, 21 Pick. 311, relied upon by the petitioners, the testator gave the improvement of his farm to his wife during her life, or widowhood, and remainder to his surviving sons, to be equally divided between them. And the court held that he intended those who survived the termination of the intermediate estate, and that nothing vested, because, until the termination of the wife's estate, it was uncertain who, or how many, would be alive to take.

But they are careful to say, and to reiterate, that " had he given to his sons generally," the result would have been different, implying that in that case the heirs of a son dying before the widow, would have inherited a vested remainder from their father.

And in *Hunt* v. *Hall*, 37 Maine, 363, the provision was that after the decease of the tenant for life, the executor was to make an equal division between the children of the testator, " and the heirs of such as may then be deceased." And the court held that if the estate were to be construed as vesting at the death of the testator, then one of the heirs might convey his share by deed, and if he died before the termination of the life-estate, leaving heirs, his conveyance would defeat their estate, which would be contrary to the express provisions of the will.

In both these cases the remainder was " limited to dubious and uncertain persons," and therefore was held to be contingent. Not so in the case at bar.

Yet if Reuel's estate could be deemed subject to a condition precedent, it would not vest, and it is therefore to be determined whether the payment of the legacies constituted such a condition. We think not, because Reuel was to have the property at his mother's decease, and none of the legacies were to be paid until months afterwards.

In distinguishing between conditions precedent and subsequent, the time fixed for the performance, whether expressly or by implication, is a matter of no slight importance. And see 1 Washburn on Real Property, 449, as to what will be regarded as a condition subsequent. The fact that an estate is subject to a condition subsequent, cannot affect its capacity for descending in the same manner as an indefeasible one, for the heir will take it *cum onere.*

As to what will constitute a breach of a condition for the payment of legacies annexed to a devise, see *Bradstreet* v. *Clark,* 21 Pick. 389.

But it was competent for the heirs of Reuel to perform the condition, and save a forfeiture. There had been no demand for the payment of the legacies, and consequently no forfeiture. *Bradstreet* v. *Clark, ubi supra.* And if there had been a demand and refusal, there had been no entry for the breach of condition, which would be necessary to work a forfeiture.

Finally, the counsel for the petitioners contends that Reuel took no vested interest, because, according to his construction of the will, Jane Leighton might lawfully consume or dispose of it all, and he cites *Harris* v. *Knapp,* 21 Pick. 412, and *Ramsdell* v. *Ramsdell,* 21 Maine, 288. But in those cases the testators expressly directed the sale of their real estate.

It may indeed be a somewhat difficult problem to carve out a life-estate in personal property, and save a remainder which the law can find means to protect, because the personalty is liable to perish in the using. But that is not this case. In the real estate of Edward Leighton, under the provisions of this will, Jane Leighton took only a life-estate. It was not even an estate for life without impeachment of waste. There was no power to dispose of the

realty, in which, as we have seen, Reuel took a vested remainder, which on his decease descended in fifths,—two-fifths to his half brothers, the petitioners, two-fifths to his own brother and sister, the respondents, and one-fifth to his mother, which last has now vested in her children, the respondents.

The result is that the petitioners are entitled to one-fifth each.

*Judgment for partition accordingly.*

APPLETON, C. J.; CUTTING, KENT, WALTON, and DANFORTH, JJ., concurred.